CRABTREE, J. T. C.
Plaintiff challenges assessments imposed by defendant pursuant to the New Jersey Corporation Income Tax Act, N.J.S.A. 54:10E-1 et seq., in the amounts of $1,308.99 for fiscal year ended November 30, 1974 and $2,123.46 for fiscal year ended November 30, 1975. The assessments are based upon income attributable to loans made by plaintiff to New Jersey residents. *352 Plaintiff, a Pennsylvania corporation, claims that the assessments violate the Due Process and Commerce Clauses of the United States Constitution, as plaintiff is engaged solely in interstate commerce, with no contacts with the State of New Jersey.
The facts are fully stipulated pursuant to R. 8:8-l(b).
Plaintiff is engaged in the consumer finance business in Pennsylvania, deriving its revenues solely from interest income, late charges on loans and on purchased installment contracts and from credit property insurance commissions. It owns no property in New Jersey; it leases no property in this State; it has no office here; it neither employs nor owns any capital in New Jersey, and it has no officers or employees in New Jersey. Plaintiff has no New Jersey telephone number, .no New Jersey mailing address, and it maintains no bank accounts or records in this State. It has no billboards or signs in New Jersey. All plaintiff’s business is negotiated, transacted and accepted in Pennsylvania.
Plaintiff operates 60 consumer loan offices in Pennsylvania. It has no offices in any other state.
In order to obtain a loan a potential customer communicates directly with one of plaintiff’s Pennsylvania offices, either by telephone or by personal visit. The customer’s credit worthiness is verified by one of two credit bureaus used by plaintiff: Camden Credit Bureau, Camden, New Jersey, and Philadelphia Credit Bureau, Philadelphia, Pennsylvania. Plaintiff communicates by telephone with its credit bureaus, which are never visited by plaintiff’s employees or representatives. In the event of loan approval the customer visits the Pennsylvania office to execute the loan documents and to receive his check. At the same time the customer is given -h coupon book with detachable stubs to be transmitted to the Pennsylvania office with each payment. Most loan payments are made in person at the applicable Pennsylvania office or mailed to that office. Plaintiff has an open-end arrangement with some customers whereby existing loans may be increased, with arrangements therefor settled by mail and telephone.
*353 Some consumer loans were made to New Jersey residents during the tax years under review. During the same period plaintiff also sold credit life insurance, accident and health insurance and credit property insurance to New Jersey resident customers. Plaintiff’s loans receivable from New Jersey residents ranged between $500,000 and $750,000.
Plaintiff permitted loan payments to be made at branch offices, including New Jersey branch offices, of Avco Financial Services, Inc., the owner of all of plaintiff’s issued and outstanding common stock (the parent company).[1] With regard to plaintiff’s Levittown branch, this occurred about five times monthly with plaintiff’s Pennsylvania and New Jersey customers. Payments could also be made at branch offices, including New Jersey branch offices, of corporations affiliated with plaintiff. The branch to which a loan payment was remitted notified plaintiff’s appropriate branch and sent its own check covering the amount of the payment to plaintiff.
Plaintiff communicated with its customers primarily by mail or by telephone from its Pennsylvania offices or in person in those offices.
In order to collect delinquent loan payments from its customers (including New Jersey customers), plaintiff mailed preprinted notices from its Pennsylvania offices; telephone calls were made and personal letters sent from plaintiff’s Pennsylvania offices. Plaintiff would sometimes dispatch a representative to a delinquent customer’s residence.
Generally, plaintiff’s Pennsylvania office personnel do not spend working hours in New Jersey. By reason of the proximity of six of plaintiff’s Pennsylvania offices to New Jersey, however, certain personnel occasionally come to New Jersey to collect delinquent loans. For example, two or three New Jersey customers of plaintiff’s Levittown office might be visited in New Jersey once or twice monthly. The managers of plaintiff’s *354 branches in Easton, Morrisville, Levittown and three other Pennsylvania communities, all in some proximity to New Jersey, spent approximately 3% to 5% of their working hours in this State. None of those branch managers used plaintiff’s equipment in pursuing plaintiff’s business within New Jersey, although they were permitted reimbursement for the trips on a mileage basis.
Plaintiff retained New Jersey attorneys to collect, by proceedings initiated in New Jersey courts, delinquent loans owed by residents of this State. Approximately six cases a year were referred to New Jersey counsel during the tax years in issue, with collections averaging $3,000 a year. The customary outcome of these cases was the garnishment of the New Jersey customer’s salary or wages, and a few New Jersey registered automobiles were repossessed. There were no repossessions of household goods and no foreclosures upon New Jersey real property.
While most of plaintiff’s loans were unsecured, plaintiff sometimes required a customer to transfer a security interest in real property, consumer goods, household effects or automobiles. No loans to New Jersey residents were secured by real property or mobile homes. UCC-1 Financing Statements for consumer goods or household effects were sometimes filed in New Jersey recording offices. Security interests in automobiles registered in New Jersey were sometimes noted on Certificates of Title and filed with the New Jersey Division of Motor Vehicles in Trenton, New Jersey. The Certificates of Title were held by plaintiff.
Plaintiff never took a wage assignment as security for a loan. Potential customers learned of plaintiff through the latter’s present and former customers and some general radio advertising provided to the parent company by Avco Financial Services Management Co. (the management company), a wholly owned subsidiary of the parent company. Plaintiff reimbursed the parent company for its proportionate share of advertising services provided by the management company. Plaintiff itself did not advertise in New Jersey.
*355 Plaintiff filed Pennsylvania capital stock-loans-corporate net income tax reports and paid the taxes shown due thereon to Pennsylvania, which imposed such taxes upon 100% of plaintiffs capital stock, loans and net income. The income sought to be taxed by defendant is a part of the same income previously taxed by the Commonwealth of Pennsylvania.
Plaintiff estimates that it received about $150,000 of interest income from New Jersey residents during each of the tax years in issue. Plaintiffs total net income, as reported for Pennsylvania tax purposes, was $940,430 for the fiscal year ended November 30,1974 and $931,355 for the fiscal year ended November 30, 1975.
The assessments in this case arose from plaintiffs filing a Notice of Business Activities Report pursuant to the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13-14 et seq.
Plaintiff contends that the imposition of the New Jersey Corporation Income Tax, under the facts of this case, violates the Due Process Clause of the United States Constitution. U.S.Const.Amend. XIV, § 1. Plaintiff also argues that the tax creates an unconstitutional burden upon interstate commerce. Those two claims are closely related. The tests for ascertaining Due Process and Commerce Clause violations are similar. National Bellas, Hess, Inc. v. Dep’t of Revenue, 386 U.S. 754, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). Accordingly, both grounds of constitutional infirmity advanced by plaintiff will be treated simultaneously.
In order for a state to tax income generated in interstate commerce both the Commerce Clause and the Due Process Clause of the United States Constitution require a substantial nexus with the taxing state and a fair relationship to the services provided by the state. Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981); Complete Auto Transit Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, reh. den. 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977).
As indicated by the facts hereinbefore stated, business offices were located exclusively in Pennsylvania. By virtue of the *356 proximity of six of sueh offices to New Jersey, some consumer loans were made to New Jersey residents, who applied for loans either in person, at one of plaintiff’s offices or by telephone. The loan application was prepared in the Pennsylvania office; the credit check was undertaken by telephone (with no personal visits by plaintiff’s employees or representatives to the credit bureaus); the loan documents were executed in Pennsylvania and the loan proceeds disbursed at plaintiff’s Pennsylvania office. Most loan payments were made in person at the Pennsylvania office or by mail to that office. Collection activity with respect to delinquent loans was initiated entirely from locations outside New Jersey. Thus, plaintiff performs no services in New Jersey, nor is any of its business negotiated, transacted or accepted in this State.
In addition, as stated above, plaintiff maintains no offices in this State; it has no mailing address or telephone listing here; its officers or employees maintain no offices here; it neither owns nor leases real property or tangible personal property in New Jersey; it maintains no bank accounts or records here, and it neither employs nor owns capital in New Jersey. Even the verification of a prospective customer’s credit worthiness is accomplished by telephone contact from plaintiff’s Pennsylvania offices.
Plaintiff’s only points of contact with New Jersey are the occasional payment of loans at New Jersey branches of plaintiff’s parent company or other affiliates, the random visits to New Jersey of certain personnel to collect delinquent loans, the occasional use of New Jersey courts and recording offices, and some general radio advertising. The occasional use of related companies in aid of loan collections does not provide the required nexus. Absent a showing that separate corporations were formed or availed of in order to avoid a connection with the taxing state, or absent other evidence indicating a merger of corporate identities,- separateness of the business of different corporate entities is recognized in determining whether a corporation has a sufficient nexus with the taxing state. Nationwide Corp. v. Schneider, 7 Ohio St.2d 59, 218 N.E.2d 611 (Sup.Ct. *357 1966); Commonwealth v. Advance-Wilson Industries, Inc., 456 Pa. 200, 317 A.2d 642 (Sup.Ct.1974). See, generally, “Ownership or control by foreign corporation of stock of other corporation as constituting doing business within State under tax statutes,” 18 A.R.L.2d 202. This same principle applies to negate plaintiffs imputed presence in New Jersey by virtue of the presence here of its parent corporation.
Nor does the ad hoc agency relationship of the plaintiff to affiliated companies located in New Jersey serve to gather plaintiff within New Jersey’s taxing net. Plaintiff’s random, occasional use of an affiliate with a New Jersey branch for the processing of loan payments falls far short of the systematic, continuous exploitation of local markets through on-site employees and independent contractors, which the United States Supreme Court has found to constitute substantial nexus for taxing purposes. See, e.g., Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed. 2d 660 (1960); Standard Pressed Steel Co. v. Washington Dep’t of Revenue, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).
Plaintiff’s use of New Jersey courts to effectuate collection of delinquent loans was de minimis in both absolute and relative terms. As indicated above, plaintiff’s loans receivable from New Jersey residents ranged between $500,000 and $750,000, while collections through New Jersey legal action averaged $3,000 annually.
In like manner, the occasional filing of financing statements in New Jersey recording offices affords no basis for a taxing nexus. The issue in this regard is not whether New Jersey affords some benefits and protections to plaintiff’s economic activities, but rather the extent of plaintiff’s contacts with New Jersey in the first instance. The facts, all of which have been stipulated, do not warrant an inference of substantial, regular use of either the courts or the recording offices in New Jersey as an integral part of plaintiff’s operations here.
As for the significance of general radio advertising, the United States Supreme Court has held that media advertising does *358 not constitute a nexus for taxing purposes. Miller Bros. Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, reh. den. 347 U.S. 964, 74 S.Ct. 708, 98 L.Ed. 1106 (1954).
The inescapable conclusion to be drawn from the foregoing is that, while plaintiff had some contacts with New Jersey, those contacts were incidental and insignificant in comparison to the overall interstate character of plaintiff’s loan transactions. Indiana Dep’t of State Revenue v. J. C. Penney Co. Inc., 412 N.E. 2d 1246 (Ind.App.1980).
I conclude, on the basis of the foregoing, that plaintiff’s nexus with New Jersey is insubstantial and thus the imposition of the tax in question violates the Due Process and Commerce Clauses of the United States Constitution.
Defendant contends, however, that the mere receipt of loan payments made at plaintiff’s Pennsylvania offices by persons residing in New Jersey renders the income attributable to those payments taxable by New Jersey without violation of the Federal Constitution. Otherwise stated, the income is taxable because it is derived from sources within New Jersey, within the purview of N.J.S.A. 54:10E-2. The validity of this contention depends upon a preliminary determination that the loans and the interest income generated thereby have an independent situs in this State, for it is a well-established constitutional principle that a state may not tax income earned beyond its boundaries. Hans Rees’ Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931); Connecticut General Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938); Evco v. Jones, 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1977).
The taxable situs of an intangible (such as a loan receivable) is the domicile of the owner-creditor unless the intangible has been integrated with a business carried on in another state, in which case the taxable situs is in the latter state. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936); Newark Fire Ins. Co. v. State Board of Tax Appeals, 118 N.J.L. 525 (Sup.Ct.1937), aff’d per curiam 120 N.J.L. 224 (E. & A. 1938), aff’d 307 U.S. 313, 59 S.Ct. 918, 83 L.Ed. 1312 (1939); J. *359 B. Williams Co., Inc. v. Glaser, 114 N.J.Super. 156, 275 A.2d 447 (App.Div.1971). The proofs in the case before this court demonstrate that plaintiff’s loans to New Jersey residents never became an integral part of any business conducted by plaintiff in this State and thus they never acquired a taxable situs here. As the intangibles themselves lacked a New Jersey situs, so the income therefrom also lacked a situs in this State.
As the income sought to be taxed was not earned in New Jersey in the constitutional sense, that income bears no rational relationship to values connected with New Jersey. A state’s taxing power must bear a fiscal relation to protection, opportunities and benefits afforded by the taxing state. Wisconsin v. J. C. Penney & Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940).
Accordingly, I conclude, on the basis of the foregoing, that plaintiff has no business activity in New Jersey, that the income attributable to the loans made to New Jersey residents was not earned in this State, and therefore, that plaintiff was not afforded benefits from New Jersey proportional to the tax which defendant seeks to impose.
All the cases relied upon by defendant to support the exercise of New Jersey’s taxing power involved substantial contacts with the taxing state. In Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.1970), aff’d per curiam 57 N.J. 199, 270 A. 2d 702 (1970), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971), the Appellate Division relied upon findings by the Division of Tax Appeals which were illustrative of extensive, systematic use of personnel and property for the production of income in New Jersey. In Northwestern States Portland Cement Co. v. Minnesota, supra, the taxpayer, in addition to engaging in a vigorous and continuing sales campaign, maintained a central office in the state with at least seven full-time employees working and living in the state. In Wisconsin v. J. C. Penney & Co., supra, the foreign corporation was licensed to do business in Wisconsin and was in fact doing business there. In Scripto, Inc. v. Carson, supra, the taxpayer, while maintaining no office, property or employees in the taxing state, nevertheless had written contracts with ten wholesalers, jobbers or *360 salesmen who conducted continuous local solicitation in the taxing state upon behalf of the taxpayer. In Standard Pressed Steel Co. v. Washington Dep’t of Revenue, supra, the corporation maintained within the taxing state an employee engaged in substantial activities in connection with the corporation’s sales. In addition, the corporation’s engineers paid regular periodic visits to customers in the taxing state.
All the other cases cited by defendant involved substantial contacts or a significant economic presence (e.g., substantial payroll, invested capital and the like) in the taxing state. In the United States Supreme Court cases of Mobil Oil Corp. v. Comm’r of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), and Exxon Corp. v. Wisconsin Dep’t of Revenue, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), the issue was the constitutional validity of an allocation of income derived from the operation of a unitary business. The substantial physical presence of the taxpayer within the taxing state was not disputed.
The foregoing disposition of plaintiff’s contentions with respect to the Due Process and Commerce Clauses makes it unnecessary to address plaintiff’s remaining contentions.
Judgment will be entered granting plaintiff’s claims for refund.

The parent company was authorized to do business in New Jersey and operated branch offices in this State.