AVCO FINANCIAL SERVICES CONSUMER DISCOUNT CO. ONE, INC., PLAINTIFF-RESPONDENT, v. DIRECTOR, DIV. OF TAXATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 18, 1984—Decided February 27, 1984.

Before Judges MICHELS, KING and DREIER.

*Martin L. Wheelwright*, Deputy Attorney General argued the cause for appellant (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James J. Ciancia*, of counsel and *Martin L. Wheelwright*, on the brief).

*Alvin Weiss* argued the cause for respondent (*Riker, Danzig, Scherer & Hyland*, attorneys; *Marie L. Garibaldi, Jacqueline Robinson Drakeford* and *J. Ferd Convery, III*, on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

The Director of the Division of Taxation has appealed from an adverse determination by the Tax Court, reported at 4 *N.J.Tax* 349 (1982), thwarting the defendant's efforts to tax the income received by plaintiff from loans made through its Pennsylvania offices to New Jersey residents. This case requires an analysis of the Corporate Income Tax Act, *N.J.S.A.* 54:10E–1 *et seq.*, and of the Commerce Clause, *U.S. Const.* Art. 1, § 8 and the Due Process Clause, *U.S. Const.* Amend. XIV, § 1. The Tax Court judge held that the imposition of the tax based upon the New Jersey income received by plaintiff violated both Federal constitutional provisions. The amounts in controversy are small, $1,308.99 for plaintiff's fiscal year ending November 30, 1974, and $2,123.46 for plaintiff's 1975 fiscal year, but the legal principles are of broad application.

The facts, which have been stipulated pursuant to *R.* 8:8–1(b), are adequately set forth in the Tax Court opinion, 4 *N.J.Tax* at 352–355, and will not be repeated here, except where necessary to explain our disagreement with the Tax Court.

■ The Tax Court judge in his comprehensive and well written opinion properly focused on the nexus between the activities of plaintiff in New Jersey and the disputed income received by plaintiff to determine whether the contact was substantial enough for taxing purposes. Just after the filing of the Tax Court opinion the United States Supreme Court decided *ASARCO, Inc. v. Idaho State Comm'n*, 458 *U.S.* 307, 102 *S.Ct.*

3103, 73 *L.Ed.*2d 787 (1982), completing a trilogy of cases; see also *Mobil Oil Corp. v. Comm'r of Taxes of Vermont,* 445 *U.S.* 425, 100 *S.Ct.* 1223, 63 *L.Ed.*2d 510 (1980) and *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 *U.S.* 207, 100 *S.Ct.* 2109, 65 *L.Ed.*2d 66 (1980). These latter cases were distinguished by the trial court, 4 *N.J. Tax* at 360, and dealt in the main with the allocation of unearned income to various taxing states where earned income was generated, applying the "unitary-business principle." In discussing the application of state income tax, the U.S. Supreme Court in *ASARCO, Inc.* noted that it adhered to its previous statements of principles quoted in *Mobil Oil Corp.:*

> ... that due process limitations on Vermont's attempted tax would be satisfied if there were "a 'minimal connection' between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise." [*Mobil Oil Corp.* 445 *U.S.*] at 436–437 ... [100 *S.Ct.* at 1231–1232] [458 *U.S.* at 316, 102 *S.Ct.* at 3109, 73 *L.Ed.*2d at 795.]

The court there cited the income tax formula case of *Moorman Mfg. Co. v. Bair,* 437 *U.S.* 267, 98 *S.Ct.* 2340, 57 *L.Ed.*2d 197 (1978), reh'g den. 439 *U.S.* 885, 99 *S.Ct.* 233, 58 *L.Ed.*2d 201 (1978), the sales and use tax cases of *National Bellas Hess, Inc. v. Dept. of Revenue State of Illinois,* 386 *U.S.* 753, 87 *S.Ct.* 1389, 18 *L.Ed.*2d 505 (1967), and *Norfolk & Western R. Co. v. Missouri Tax Comm'n,* 390 *U.S.* 317, 88 *S.Ct.* 995, 19 *L.Ed.*2d 1201 (1968), reh'g den. 390 *U.S.* 1046, 88 *S.Ct.* 1633, 20 *L.Ed.*2d 311 (1968) (noting that a state may attribute income for tax purposes only where it is rationally related to "values connected with the taxing State," 390 *U.S.* at 325, 88 *S.Ct.* at 1001. The trial judge here, although utilizing the standards set forth in these cases, failed to appreciate the minimum showing that a taxing district such as New Jersey would have to make as to the activities that would provide a basis for income taxation.

Before we examine each of plaintiff's specific activities within New Jersey, however, we must note that New Jersey does not employ the single-factor formula upheld in *Moorman*

*Mfg. Co.*, but rather the more equitable three-factor formula which analyzes the activities of the taxpayer from the standpoints of its property, payroll and sales within the taxing state, rather than by sales or income alone. Thus, since New Jersey applies the more lenient of the two recognized methods of taxation, there is *no inordinate effect* on plaintiff of evaluating its New Jersey income where it has neither personnel nor property in the state.

■ Were there the "minimal connections" between the interstate activities of AVCO and New Jersey upon which the taxing power over the disputed income could rest? As the U.S. Supreme Court noted in *National Bellas Hess, Inc. v. Dept. of Revenue State of Illinois, supra*, 386 *U.S.* at 756, 87 *S.Ct.* at 1391. "[I]n determining whether a state tax falls within the confines of the Due Process Clause, the Court has said that the 'simple but controlling question is whether the state has given anything for which it can ask return.' *Wisconsin v. J.C. Penney Co.*, 311 *U.S.* 435, 444, 61 *S.Ct.* 246, 249, 85 *L.Ed.* 267 [1940]..." The Court there stated that the test under the Commerce Clause and Due Process Clause is the same. We are attempting to find " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' *Miller Bros. Co. v. Maryland*, 347 *U.S.* 340, 344–345, 74 *S.Ct.* 535, 538–539, 98 *L.Ed.* 744 [1954]; *Scripto, Inc. v. Carson*, 362 *U.S.* 207, 210–211 [80 *S.Ct.* 619, 621–622, 4 *L.Ed.*2d 660] [1960]..." [386 *U.S.* at 756–757, 87 *S.Ct.* at 1391–1392].

■ Although the trial judge reached this correct issue, he did so only after an analysis of the situs of the receivables and a finding that "the income sought to be taxed was not earned in New Jersey in the constitutional sense." 4 *N.J.Tax* at 359. He reasoned that the loans were physically made in Pennsylvania to the New Jersey residents, and the situs of the indebtedness "is the domicile of the owner-creditor." 4 *N.J.Tax* at 358; *cf. J.B. Williams Co., Inc. v. Glaser*, 114 *N.J.Super.* 156, 161

(App.Div.1971). The court further reasoned that since the intangibles lacked a New Jersey basis the income therefrom also lacks such a situs, and thus, in the constitutional sense, that income would bear "no rational relationship to values connected with New Jersey." 4 *N.J.Tax* at 359. The thrust of his inquiry, however, should have been as to whether plaintiff conducted activities in New Jersey so as to make it reasonable that the tax imposed required plaintiff to pay its "fair share of the cost of the local government whose protection it enjoys." *National Bellas Hess, Inc.*, 386 *U.S.* at 756, 87 *S.Ct.* at 1391 quoting *Freeman v. Hewit*, 329 *U.S.* 249, 253, 67 *S.Ct.* 274, 277, 91 *L.Ed.* 265 (1946).

Let us examine plaintiff's New Jersey connections. Its parent company, AVCO Financial Services, Inc. is authorized to do business in New Jersey and operates several branch offices in this State. When applications for New Jersey credit are made to plaintiff's Pennsylvania branches it verifies the credit of the applicant either by a Pennsylvania credit bureau or through the Camden Credit Bureau in Camden, New Jersey. Plaintiff permitted both its Pennsylvania and New Jersey customers to make payments at its parent company's New Jersey branch offices, and this occurred approximately five times per month. When this occurred, the branch to which the loan payment was made would forward its own check covering the particular payment. When customers moved beyond a reasonable payment area, loan files would be transferred between the Pennsylvania and New Jersey offices. When a New Jersey loan was delinquent, plaintiff would mail notices to New Jersey, place telephone calls and, if necessary, send a representative to the customer's residence. Three to five percent of the working hours of the managers of six of plaintiff's nearest branches were spent in New Jersey. Where necessary, New Jersey attorneys were retained to collect delinquent loans through judgments, wage executions, repossessions or other collection devices. Radio advertising was provided by the parent company through another wholly owned subsidiary and plaintiff reim-

bursed AVCO Financial Services, Inc. for its proportionate share of such advertising; although some of this advertising was directed at New Jersey, plaintiff itself did not advertise here. Although not treated by the trial court, additional factors were substantiated in the record below. Plaintiff also purchased installment contracts from other entities, one of which is Dean's Appliance located in Washington, New Jersey. AVCO supplied installment contract forms to Dean's and, when completed, the contracts were submitted to AVCO for approval. Only when approved by AVCO would Dean's deliver the merchandise to the customer, and payments were received directly from AVCO (which included the profit from the sale of the contract). Compare *Unico v. Owen,* 50 *N.J.* 101, 121–123 (1967), for authority to implicate the financer in the underlying New Jersey transaction. In addition to the advertising noted earlier, AVCO's parent through its management subsidiary provided centralized management services including personnel, business forms, credit practices, tax returns, etc.

■ Of these activities a few are recognized as not providing the basis for jurisdictional due process. *See, e.g.,* the general advertising cases of *Serbin v. Walt Disney World,* 159 *N.J.Super.* 88 (App.Div.), certif. den. 78 *N.J.* 337 (1978) and *Dowd v. Boro Drugs Inc.,* 70 *N.J.Super.* 488, 505 (App.Div.1961); *cf. Blessing v. Prosser,* 141 *N.J.Super.* 548 (App.Div.1976) (service of process cases, but making a "minimum contact" due process analysis). Such an analysis might be proper were we considering a franchise tax such as the corporation business tax, where the interstate aspect of the transaction would protect plaintiff. But, as our Supreme Court has noted in *Roadway Express Inc. v. Director Div. of Taxation,* 50 *N.J.* 471, 485 (1976), app. dism., 390 *U.S.* 745, 88 *S.Ct.* 1443, 20 *L.Ed.*2d 276 (1968), although the interstate commerce protection would protect a taxpayer from a franchise tax, "[t]here seems to be no question that, if it had been enacted and denominated as a direct corporate income tax, it would have been validly applicable to the taxpayers here by virtue of *Northwestern States Portland Cement Co. v. State*

*of Minnesota,* 358 *U.S.* 450, 79 *S.Ct.* 357, 3 *L.Ed.*2d 421 (1959)."
We have such a corporate income tax here under consideration,
and therefore the interstate aspects of the advertising or other
contacts within New Jersey are not bars to their being con-
sidered as a basis for the imposition of this levy.

■ The collection efforts of plaintiff stand on a similar
footing. If there were insufficient contacts with New Jersey
upon which we could base a finding of taxability the mere fact
that plaintiff resorts to our courts or otherwise employs collec-
tion efforts within this State might not alone provide a basis for
taxation, but coupled with plaintiff's other contacts we may
also consider this activity. *Cf. Roadway Express Inc. v. Di-
rector Div. of Taxation, supra,* 50 *N.J.* at 491 (corporation to
pay its just share of cost of state government from which it
receives protection).

■■ What apparently gave the trial judge pause here is the
relatively small amount of income received from New Jersey,
the lack of either personnel or property within this State, as
well as the possibility of double taxation should both Pennsylva-
nia and New Jersey attempt to tax the same income. As noted
earlier, the New Jersey formula takes into consideration three
aspects of a taxpayer's activity in imposing the tax in question.
The formula requires the imposition of the tax upon the sum of
the property, payroll and sales factors, divided by three. Since
plaintiff had no personnel or property in this State the income
figure alone generated a miniscule taxation percentage
(.003455). There is no constitutional requirement that any state
employ a *de minimis* principle. If New Jersey wishes to
assess and collect the few thousand dollars in taxes yielded by
the application of this percentage of AVCO's entire net income,
plaintiff may not complain. There should be no double taxation
since AVCO should have an appropriate off-set against its
Pennsylvania tax if this levy is validly imposed. *See* 72 *P.S.*

§ 7401(3) 2(a)(3). *See also Hellertown Mfg. Co. v. Commonwealth,* 25 *Pa.Commw.* 90, 358 *A.*2d 424 (Commw.Ct.1976), aff'd, 480 *Pa.* 358, 390 *A.*2d 732 (Pa.1978) and *Triumph Hosiery Mills, Inc. v. Commonwealth,* 469 *Pa.* 92, 364 *A.*2d 919 (Pa.1976), app. dism., 429 *U.S.* 1083, 97 *S.Ct.* 1090, 51 *L.Ed.*2d 530 (1977). We note, as did the U.S. Supreme Court in *Moorman Mfg. Co. v. Bair, supra,* 437 *U.S.* at 279, 98 *S.Ct.* at 2347, that a complete protection from "duplicative taxation ... would require national uniform rules for the division of income." Unfortunately, this has not been accomplished, and since Congress has not acted, and the Supreme Court did not impose such a uniform standard, there is no absolute protection against some minimal double taxation. *Moorman Mfg. Co.* at 278–281, 98 *S.Ct.* at 2347–2348. Given the Pennsylvania statute cited above, we envision no such problem here.

■ We find a rational relationship between plaintiff's income attributed to New Jersey and the benefits conferred by New Jersey to justify the imposition of the tax levied here. The internal regulation of the credit market which enables plaintiff's parent to accept payments and process loans; the administration of the Retail Installment Sales Act which regulates the issuance and transfer of the installment paper that plaintiff buys from Dean's Appliance; the maintenance of the courts and the general regulation of collection processes that permit plaintiff to realize on loans which are in default, are all elements of such a foundation. *Cf. Roadway Express Inc. v. Director Div. of Taxation, supra,* 50 *N.J.* at 492–493. *N.J.S.A.* 54:10E–2 imposes a tax "on income derived from sources within New Jersey," and the Director properly assessed such tax in this case.

The judgment of the Tax Court is reversed, and this matter is remanded to the Tax Court for the computation of all sums due, with interest to date. We do not retain jurisdiction.