FIAMINGO, J.T.C.
This is the court’s opinion[1] with respect to the parties’ cross-motions for summary judgment. The issue presented is the amount of the New Jersey Gross Income Tax (“GIT”) credit for income taxes paid to New York State to which the individual plaintiff, Marina Shakour-Haber (“plaintiff’)[2] is entitled. Plaintiff contends that she is entitled to a credit calculated with reference to the income passed through to her as the sole shareholder of the S corporation, Criticare, Inc. (“Criticare”), as determined by the State of New York, and which was actually taxed by that state. Defendant (“Director”) concedes that a credit is allowable but must be calculated to take into account the income properly “allocated to New Jersey” against which the credit is not allowed.
At issue is the interpretation of the limitation of the credit allowed against the GIT for income taxed by another state set forth in N.J.S.A. 54A:4-1(c).
For the following reasons, defendant’s motion is granted and plaintiffs motion is denied.
*173 I. Facts
Plaintiff is the sole shareholder of Criticare, a New Jersey corporation, which provides registered nurses and other personnel to hospitals and clinics in New York and New Jersey. Criticare has duly elected to be taxed as an S corporation for both federal and New Jersey tax purposes.[3] For calendar year 2009, Criticare filed a New York S Corporation Franchise Tax Return which, based on the New York single sales factor allocation computation, allocated 80% of its income to New York State.
Plaintiff filed a 2009 New York State Nonresident Income Tax Return on which she included the income of Criticare allocated to New York (as calculated on the New York S Corporation Franchise Tax Return) and passed through to her as the sole shareholder. She paid New York income tax in the amount of $66,587. Criticare also filed a New Jersey Corporate Business Tax (“NJ CBT”) Return for calendar year 2009 allocating 100% of its income to New Jersey because it did not maintain a regular place of business outside New Jersey.[4] Plaintiff also filed a 2009 New Jersey GIT Return on which she sought a GIT credit against New Jersey taxes in the amount of the $66,587 in income taxes paid to New York State.
In connection with an audit of the plaintiffs GIT return, the Director required that Criticare provide a pro forma CBT-100S Return recalculating its income as if it maintained a regular place of business outside of the State of New Jersey. That return resulted in the allocation of 39.2031% of Criticare’s income to the State of New Jersey, rather than the 100% required in the NJ CBT return filed by it.
*174 On March 1, 2013 the Director issued a Notice of Deficiency-denying plaintiffs GIT credit in part and assessing GIT of $20,130, plus interest and penalties[5]. On May 29, 2013 plaintiff filed the Complaint challenging the Director’s Notice of Deficiency.
II. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deriding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express import of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth Cnty. Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146).
The parties agree that the facts are not at issue and that the resolution of the dispute will revolve around the interpretation and application of the relevant GIT statute, N.J.S.A. 54A:4-1 and in particular the limitation of subsection (c) thereunder. Therefore, the matter is ripe for summary judgment.
The review of this matter begins with the presumption that determinations made by the Director are valid. See Campo Jersey, Inc. v. Director, Div. of Taxation, 390 N.J.Super. 366, 383, *175 915 A.2d 600 (App.Div.), certif. denied, 190 N.J. 395, 921 A.2d 448 (2007); L & L Oil Service, Inc. v. Director, Div. of Taxation, 340 N.J.Super. 173, 183, 773 A.2d 1220 (App.Div.2001); Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953). “New Jersey Courts generally defer to the interpretation that an agency gives to a statute [when] that agency is charged with enforcement.]” Koch v. Director, Div. of Taxation, 157 N.J. 1, 15, 722 A.2d 918 (1999). Determinations by the Director are afforded a presumption of correctness because “[c]ourts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The Supreme Court has directed courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742.
An S corporation is not subject to GIT. However, the income, dividends and gains of an S corporation are allocated to its shareholders and subjected to GIT in the shareholder’s return whether or not actually distributed. N.J.S.A. 54A:5-9. Thus, although an S corporation is not subject to the GIT directly, all of its income is taxed at the shareholder level.
A resident taxpayer is generally subject to the GIT on all income earned, regardless of the source of the income. See N.J.S.A. 54A:5-1. In order to minimize or avoid double taxation of New Jersey residents’ gross income that is also subject to tax in the same year in another state, N.J.S.A. 54A:4-1 permits a resident taxpayer a credit against the GIT for taxes paid to other jurisdictions. Ambrose v. Director, Div. of Taxation, 198 N.J.Super. 546, 552, 487 A.2d 1274 (App.Div.1985). “[I]f the same income is taxed in another state and in this state for the same tax year, the Legislature intends the New Jersey resident to receive a credit for the tax paid in the other state.” Sutkowski v. Director, Div. of Taxation, 312 N.J.Super. 465, 474-75, 712 A.2d 229 (App.Div.1998). “The credit is available to New Jersey residents *176 for any income tax or wage tax imposed by another state with respect to income which is also subject to tax by New Jersey.” Sorensen v. Director, Div. of Taxation, 2 N.J.Tax 470, 471, 184 N.J. Super. 393, 446 A.2d 213 (Tax 1981).
The amount of the credit cannot exceed the “proportion of the tax otherwise due ... that the amount of the taxpayer’s income subject to tax by the other jurisdiction bears to his entire New Jersey income.” N.J.S.A. 54A:4-1(b). Thus the limitation on the credit is a percentage, the numerator of which is the taxpayer’s income subject to tax by the foreign jurisdiction and the denominator of which is the taxpayer’s total New Jersey income. The result of that fraction is applied against the taxpayer’s total GIT liability to determine the amount of the credit.
When a resident taxpayer has income from an S corporation the amount of the allowable credit is subject to the further limitation of N.J.S.A. 54A:4-1(c): “No credit shall be allowed against the tax otherwise due under this act for the amount of any income tax or wage tax imposed for the taxable year on S corporation income allocated to this State.” It is the manner in which “S corporation income allocated to this State” is calculated that is the subject of this appeal.
The definitional provision of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:5-10, states in part, “For the purposes of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq.: ... ‘S corporation income allocated to this State’ means that portion of the S corporation income that is allocated to this State by the allocation factor of the corporation for the fiscal or calendar accounting period pursuant to [N.J.S.A. 54:10A-6 through N.J.S.A. 54:10A-10] ...” N.J.S.A. 54A:5-10. The referenced provisions detail with some specificity how the income of a corporation with a regular place of business outside the state is to allocate its income to New Jersey. Thus, without more, the plain language of N.J.S.A. 54A:4-1(e) and N.J.S.A. 54A:5-10 would dictate that the definition of “S corporation income allocated to this State” is set forth in N.J.S.A. 54A:5-10.
*177 Plaintiff however contends that this position was rejected by this court in Beljakovic v. Director, Div. of Taxation, 26 N.J.Tax 455 (Tax 2012). Plaintiff maintains that the Beljakovic decision requires that the income of an S corporation which is allocated to and actually taxed by a foreign jurisdiction (as determined by the foreign jurisdiction) cannot be considered “income allocated to (New Jersey)” for purposes of the N.J.S.A. 5A:4-1(c) limitation, regardless of the NJ CBT provisions.
In Beljakovic, the Director disallowed completely the GIT credit to a taxpayer for income from a New Jersey S corporation also taxed by New York State. The Director contended that since the New Jersey corporation had no regular place of business outside the State of New Jersey it was required to allocate 100% of its income to New Jersey for NJ CBT purposes in accordance with the provisions of N.J.S.A. 54:10A-6 as in effect at that time.[6] As a result none of the S Corporation income taxable to the shareholder by the foreign jurisdiction was eligible for the credit against the GIT because all of its income was allocated to New Jersey.
In reviewing the statutory provisions applicable to the GIT credit and S corporation income, the court noted:
N.J.S.A. 54A:5-10 was enacted at the same time and as part of the same law (L. 1993, c. 173) taxing S corporation income on a corporate and on a shareholder level. Therefore, the contemporaneous enactment of this provision, and the express incorporation of the CBT provisions therein indicates clear legislative expression that the term “allocated” in [N.J.S.A. 54A:4-1(c)] means corporate income, the allocation of which is to be determined under the CBT Act.
[Id. at 468.]
However, the court refused to permit the strict application of N.J.S.A. 54:10A-6 which would have completely denied any GIT credit to a shareholder of an S corporation without a regular place of business outside the State of New Jersey. “[T]he court rejects the Director’s argument that the 100% allocation mandated by the CBT Act (for tax year 2006) must prevail over the goal and purpose of N.J.S.A. 54A:4-1(a).” Id. at 469.
*178 The court did not find that the NJ CBT was wholly inapplicable. Instead, the court found that the Director had failed to exercise his authority under N.J.S.A. 54:10-8[7] to adjust the allocation factor of N.J.S.A. 54:10A-6 to ensure and effect a fair and proper allocation of corporate income to New Jersey.
[CBT Section 8] provision was intended to ensure that income is properly allocated and apportioned to New Jersey such that New Jersey receives its fair share of taxes, but at the same time complies with basic legal principles as to New Jersey’s limitations in taxing income sourced outside its borders. See N.J.S.A. 54:10A-8; [Hess Realty Corp. v. Director, Div. of Taxation, 10 N.J.Tax 63, 80-81 (1988) ] (“[i]t is an implicit premise of the CBT that under certain circumstances the apportionment formulas outlined in [CBT Section] 6, i.e., either the three-factor formula or the 100% business allocation factor, may not fairly approximate a taxpayer’s true ... net income attributable to its New Jersey activities”); Brunswick Corp. v. Director, Div. of Taxation, 11 N.J.Tax 530, 539 (Tax 1991) (“[t]he purpose of an allocation factor is to determine fairly what percentage of the value of a multi-state corporation is generated in-state”), aff'd, 135 N.J. 107 [638 A.2d 805] (1994).
[Id. at 482.]
With the court’s decision in Beljakovic in mind, the Director required that Criticare recalculate its income allocable to the State of New Jersey under N.J.S.A. 54:10A-6 as if it maintained a regular place of business outside of New Jersey during the year in question. Instead of the automatic 100% allocation to New Jersey, the three-factor formula of N.J.S.A. 54:10A-6 was applied. Those factors take into account property within the State of New Jersey compared to all of the corporation’s property (“property fraction”), receipts from sales within the State of New Jersey compared to all sales (“sales fraction”), and wages and salaries of *179 officers and employees within the State of New Jersey compared to wages and salaries of all officers and employees (“payroll fraction”). N.J.S.A. 54:10A-6. The allocation factor is determined by adding the property fraction, twice the sales fraction and the payroll fraction and dividing the result by four.
Applying the three-factor allocation formula to Criticare resulted in an allocation factor of 39.2031%, rather than 100% under the regular place of business rule and 20% under New York law.[8] This new allocation factor was then applied to Critieare’s total income to determine “income allocated to this State” and was then used to re-determine the limitation on the GIT credit available to plaintiff. The ultimate result was the reduction of the available GIT credit and the issuance of the Notice of Deficiency.
I find the Director properly and appropriately effected the separation of New Jersey source income from foreign source income by applying the same allocation factors to Criticare’s income as would be applied to a non-S corporation with a regular place of business outside the State. I further find that in doing so, the Director’s actions were in keeping with the purpose of the GIT credit provision, N.J.S.A. 54A:4-1.
New Jersey seeks to protect from double taxation the non-New Jersey source income taxed by another jurisdiction. A formula is used to separate foreign income from New Jersey income. The New Jersey source income, which need not be shielded from double taxation, remains subject to New Jersey tax undiminished by the foreign tax credit.
[Jenkins v. Director, Div. of Taxation, 4 N.J.Tax 127, 133, 184 N.J.Super. 402, 446 A.2d 217 (Tax 1982).]
The credit is not designed to protect a resident taxpayer from the tax imposed by a foreign jurisdiction on New Jersey sourced income. It is the multiple taxation on non-New Jersey source income that the Legislature intended to remedy. As to such foreign income, New Jersey “yields, under N.J.S.A. 54A:4-1, *180 to the foreign jurisdiction on foreign source income.” Kanarek v. Director, Div. of Taxation, 14 N.J.Tax 589, 594 (Tax 1995).
The adoption of plaintiffs interpretation would cede New Jersey’s authority to tax New Jersey source income to a foreign jurisdiction and would ignore thirty years of contrary interpretation of the credit statute. See Jenkins v. Director, Div. of Taxation, supra, 4 N.J.Tax 127, 446 A.2d 217. Plaintiffs position would have income of the corporation deemed “not allocated to New Jersey” simply because the foreign jurisdiction allocated the income to it and then taxed it. This is not the intent of the credit statute as it has been consistently interpreted by our courts. “[T]he intent of act is to avoid double taxation of foreign income by relinquishing all or a part of the New Jersey tax on the foreign income, but not to relinquish New Jersey tax on income earned in New Jersey.” Id. at 133, 446 A.2d 217.
Furthermore, plaintiffs contention that because Criticare is a service corporation the three-factor allocation formula applies too great an emphasis on Criticare’s rental property in New Jersey and is therefore unconstitutional is rejected. As noted above the NJ CBT allocates income on the basis of several factors: sales fraction, payroll fraction and property fraction.[9]
The three-factor formula employed in N.J.S.A. 54:10A-6 is also known as the Massachusetts Formula and is the standard method for apportioning income of a multi-state business, See, e.g., Avco Fin. Servs. Consumer Discount Co. One, Inc. v. Director, Div. of Taxation, 193 N.J.Super. 503, 507-09, 475 A.2d 66 (App.Div.1984), aff'd, 100 N.J. 27, 494 A.2d 788 (1985); Silent Hoist & Crane Co., Inc. v. Director, Div. of Taxation, 9 N.J.Tax 178, 187-88 (Tax 1987). It has been seen as the “benchmark against which other *181 apportionment formulas are judged.” See Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 180-181, 103 S.Ct. 2933, 2948, 77 L.Ed.2d 545 (1983). “[EJven though it does not provide mathematically precise territorial allocations of value, the legislatively designated three-factor formula has received judicial approval.” Hess Realty Corp., supra, 10 N.J.Tax 63 at 86 (citation omitted). The “average of the three [factors] is ordinarily a fair measure of the proportion of corporate activity within a particular jurisdiction, even though it does not fit perfectly in every situation.” F.W. Woolworth v. Director, Div. of Taxation, 45 N.J. 466, 496, 213 A.2d 1 (1965); Hess Realty, supra, 10 N.J.Tax at 86.
“A state is not constitutionally limited to taxing only that slice of an interstate enterprise operating physically within the State.” Silent Hoist & Crane v. Director Div. of Taxation, 100 N.J. 1, 5, 494 A.2d 775 (1985) (citation omitted). The Constitution does not invalidate an apportionment factor where some income that was not sourced in the taxing state is subjected to tax. See Moorman Mfg. Co. v. Bair, 437 U.S. 267, 272, 98 S.Ct. 2340, 2344, 57 L.Ed. 2d 197 (1978). It is only when the taxpayer demonstrates by clear and cogent evidence that the income attributed to the taxing state is out of all proportion to the business transacted or has led to a grossly distorted result that constitutionality is in issue. Id. at 274, 98 S.Ct. 2340.
In Silent Hoist Judge Lasser found on remand that applying the single sales factor produced allocation factors ranging from 13.89% to 26.40% during the years in question. The inclusion of the property factor changed the overall allocation factors to between 27.94% and 32.02%, including a single year in which the allocation factor doubled. The court ruled that the deviations were not out of all proportion to the taxpayer’s activities in the State. Silent Hoist, supra, 9 N.J.Tax at 192. See also Natural Gas v. Director, Div. of Taxation, 24 N.J.Tax 59 (Tax 2008).
The court rejects plaintiffs position that since 80% of its services were rendered in the State of New York, New Jersey is required to take only that factor into account in calculating New Jersey source income and that to do otherwise is unconstitutional. *182 Plaintiff has failed to demonstrate by clear and cogent evidence that the activities of Criticare within its offices in this State are so inconsequential that an allocation of 19.20% of Criticare’s sales to New Jersey office produces a grossly distorted result or is out of all proportion to the business transacted in New Jersey.
Plaintiff also contends that the allocation percentage as determined by the Director is administratively unfair and the Director should exercise his authority under N.J.S.A. 54:10A-8 to properly reflect Criticare’s activities, business receipts and income reasonably attributed to this State. In doing so, plaintiff again maintains that only the sales fraction should be taken into account in determining the allocation. Plaintiff again cedes no value to the location of its business/sales offices in the State of New Jersey.
N.J.S.A. 54:10A-8 refers only to the fairness of the overall allocation factor, not to the fairness of any one factor. Therefore the inquiry is whether the overall allocation factor as applied to the taxpayer fairly reflects its activities in New Jersey. See Silent Hoist, supra, 9 N.J.Tax at 193. Plaintiff acknowledges that, based solely on services rendered, approximately 20% of its income was earned through services rendered within the State of New Jersey. Plaintiff has offered no other proposal as to income to be allocated to the State of New Jersey. We therefore proceed on the basis that plaintiffs position is that the Director should exercise discretion to include only that income derived from services performed within the State of New Jersey.
The Director maintains no further adjustment is necessary because the three-factor allocation of N.J.S.A. 54:10A-6 fairly and properly apportions Criticare’s income to the State. From the limited information before this court, it appears that all sales of services are generated from the offices located in New Jersey. Plaintiff did not argue to the contrary. The Director contends Criticare managed its business and generated all of its income from this location and therefore it is eminently fair to allocate a portion of its income on a basis other than just where the services were rendered. Thus, the Director argues that having applied the *183 three-factor allocation formula a fair result has been achieved and no additional exercise of discretion is necessary.
“The considerations involved in discretionary adjustment matters necessarily have to rest to a considerable extent on the competence and expertise of the Director. As has oftén been said, taxation is an intensely practical matter and an approach must be adopted which will be administratively feasible.” F.W. Woolworth, supra, 45 N.J. at 499-500, 213 A.2d 1 (citations omitted).
This is not a situation as in Beljakovic, supra, 26 N.J.Tax 455, where the Director did not consider an adjustment of the allocation factor. The Director considered it by applying the three factor formula and adjusting the allocation from 100% to 39.2031%. The Director considered and rejected plaintiffs request for an additional adjustment.
The Director’s exercise of his authority in applying the allocation formula of N.J.S.A. 54:10A-6 to Criticare, as if it maintained a regular place of business outside of the state, resulted in a fair apportionment of its income allocable to the State of New Jersey and achieved a harmonious interpretation of the limitation contained in N.J.S.A. 54A:4-1(c) with both N.J.S.A. 54A:4-1(a) and 54A:5-10. That income was properly excluded from the determination of the amount of the GIT credit as “S Corporation income allocated to this State” as contemplated by N.J.S.A. 54A:4-1(c).

Conclusion

Plaintiffs motion for Summary Judgment is denied. Summary judgment is granted in favor of the Director. As noted above, the Director has acknowledged a slight computational error in the amount of the credit due to plaintiff. Pursuant to R. 8:9-3, within thirty days of the date hereof the parties shall submit computations of the amount of the deficiency, consistent with this opinion, to take into account the error. The court retains jurisdiction.

 This opinion was previously released as an unpublished letter opinion dated July 8, 2014.

 Although both Criticare, Inc. and Marina Shakour-Haber have filed the complaint as plaintiffs, the issue relates solely to the individual plaintiff and the calculation of the New Jersey Gross Income Tax credit to which she may be entitled.

 It appears that Criticare also elected to be taxed as an S corporation for New York Franchise Tax purposes.

 During oral argument and in some of the written documentation submitted in support of the Motions, there was some indication that Criticare may have maintained an office in the State of New York. Neither party, however, argued that Criticare maintained a regular place of business outside the State.

 The Director acknowledges a computational error which would reduce the amount of the deficiency by $782.00.

 Prior to July 10, 2010 N.J.S.A. 54:10A-6 required the allocation of 100% of a corporation's income to the State of New Jersey when a corporation did not maintain a regular place of business outside the state.

 N.J.S.A. 54:10A-8 provides:
If it shall appear to the commissioner that an allocation factor determined pursuant to section 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.

 As noted above, under New York law 80% of Criticare’s income was deemed New York sourced income. Plaintiff deducted this amount from Criticare’s total income to determine that income allocable to New Jersey was the remaining 20%.

 The Director's regulation at N.J.A.C. 18:7-8.5(b) provides that in determining the taxpayer's real and personal property for the purposes of the property fraction "property owned, leased, rented or used by the taxpayer during the period covered by the return” shall be taken into account. The value of leased or rented property is determined at eight times the annual rent. N.J.A.C. 18:7-8.5(c). The regulation and its adoption by the Director was approved by our Supreme Court in Brunswick Corp. v. Director, Div. of Taxation, supra, 135 N.J. 107, 638 A.2d 805.