EVERS, J.T.C.
Silent Hoist & Crane Co., Inc. (taxpayer), a New York corporation, appeals from a deficiency assessment imposed by the Director, Division of Taxation (Director) for taxes allegedly due for 1971 through 1974 under the Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 et seq. The issue presented is whether the scope and nature of taxpayer’s various business activities may be classified as “unitary” so as not to be violative of the limitations placed on state taxing powers by the Due Process Clause, U.S. Const. Amend. XIV, § 1, and as “unitary” is defined in F.W. Woolworth Co. v. New Mexico, 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982), pet. for reh. den. October 18, 1982, and ASARCO, Inc. v. Idaho, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), pet. for reh. den. October 18, 1982. It does not appear that the precise distinguishing characteristics between “unitary” and “nonunitary” businesses have ever been clearly decided in New Jersey; therefore, enlightened by the foregoing United States Supreme Court decisions, this court will attempt to provide such clarification.
Taxpayer does not dispute the validity of CBT but does contest the Director’s action in imposing the tax on what taxpayer claims is extraterritorial income from its manufacturing-sales business and its investment portfolio. Taxpayer contends that its business is “nonunitary” and exempt from CBT. As such it seeks to have sales income, interest, dividends and capital gains on investment assets excluded from net income, and *246 investment assets, stocks and bonds excluded from net worth for tax computation purposes.[1] Violations of due process and of the Commerce Clause, U.S. Const., Art. I, § 8, Cl. 3, have been alleged by taxpayer.
Conversely, the Director contends that his imposition of tax on taxpayer pursuant to CBT for the privilege of exercising its corporate franchise and for doing business within the State was a fair and reasonable method of allocating income and net worth for tax purposes because of the “unitary” nature of taxpayer’s business and that there were no violations of taxpayer’s constitutional rights.
For the reasons hereafter stated, the court directs that judgment be entered in favor of taxpayer. The court finds that, except for its New Jersey real estate (the tax imposed thereon is not disputed), no credible evidence was presented to conclude that taxpayer’s business, which entailed manufacturing, sales and securities investments, is subject to taxation in New Jersey.
Taxpayer’s heavy equipment manufacturing plant and its principal place of business is located in Brooklyn, New York, where it also maintains a diversified securities portfolio. The *247 record indicates all securities were assembled for investment purposes and were held by a New York broker. During the period in question taxpayer also owned two parcels of industrially-zoned land in Clifton and Bloomfield, New Jersey, neither of which were used in taxpayer’s manufacturing business; both were rented to others. This property represented taxpayer’s sole tangible connection with this State. It had no office, employees, agents or investments in New Jersey.
The CBT Act imposes a tax on a foreign corporation for the privilege of having or exercising a corporate franchise, doing business, employing or owning capital or property or maintaining an office in New Jersey.[2] The tax is calculated on those portions of the corporation’s entire net worth and entire net income allocable to New Jersey. N.J.S.A. 54:10A 2. The fundamental purpose of the apportionment provision of N.J.S.A. 54:10A-1 et seq. and the three-factor formula embodied therein is to achieve a fair apportionment to New Jersey of business conducted by a multi-state enterprise within the state. The business allocation factor of CBT limits the New Jersey allocated portions of entire net worth and entire net income to amounts which are attributable to activities occurring in or related to the State of New Jersey.[3] The limitation created by *248 the allocation factor preserves the constitutional doctrine that a state cannot impose a tax which is “not attributable to transactions within its jurisdiction”. See Hans Rees’ Sons, Inc. v. North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931), and Evco v. Jones, 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1977).
A state is not entitled to tax tangible or intangible property that is unconnected with the state ... a state will not be permitted, under the shelter of an imprecise allocation formula or by ignoring the peculiarities of a given enterprise, to “protect the taxing power of the state plainly beyond its borders”. [Norfolk and Western Ry. Co. v. Missouri Tax Comm’n, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968)]
The thrust of the Supreme Court’s decisions in Woolworth and ASARCO, supra, and two apportionment cases from the 1980 term, Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), and Exxon Corp. v. Wisconsin, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), is that “the linchpin of apportionability in the field of state income taxation is the unitary-business principle.” ASARCO, supra, 458 U.S. at 317, 102 S.Ct. at 3109, 73 L.Ed.2d at 795, quoting from Mobil, supra 445 U.S. at 439 — 440, 100 S.Ct. at 1232-1233. These cases have further articulated limiting clarifications of the term “unitary businesses” which now make it apparent that certain types of business activities are “nonunitary” as a matter of law and can be taxed solely by the state of corporate domicile. The law mandates that the Due Process Clause insures fundamental fairness of apportioned state taxes by requiring that the particular taxpayer’s business be characterized as “unitary” in nature prior to imposing the tax. ASARCO, supra; Woolworth, supra; Clairol, Inc. v. Kingsley, 57 N.J. 199, 270 A.2d 207 (1970), aff’g 109 N.J.Super. 22, 262 A.2d 213 (App.Div.1969), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971); F.W. Woolworth v. Taxation Div. Director, 45 N.J. 466, 213 A.2d 1 (1965).
As enunciated by the Supreme Court, there are three indicia of a unitary business; “functional integration, centralization of management and economies of scale.” ASARCO, supra *249 458 U.S. at 317, 102 S.Ct. at 3109, 73 L.Ed.2d at 795. In making the determination of whether due process has been complied with, proof of a “sufficient nexus” between the taxing state and the particular taxpayer must be presented. An examination of the “underlying economic realities” of taxpayer’s business supplements proof of this nexus and of the “unitary” and “nonunitary” nature of the business, (both within and without the state). In the instant case recourse must be had to the particular factual circumstances to determine whether taxpayer is subject to CBT. See generally, Ringgold Coal Mining Co. v. Taxation Div. Director, 4 N.J.Tax 321, 332 (Tax Ct.1982).
For the years at issue taxpayer reported and paid net worth taxes in the respective amounts of $3,535.83 in 1971, $4,222.49 in 1972, $4,096.53 in 1973 and $4,082.86 in 1974. Taxpayer paid no net income tax during this period. In computing its business allocation factor for schedule K of the CBT return, taxpayer reported percentages of 29.06%, 32.02%, 28.19% and 27.94% for 1971 through 1974, respectively. To alleviate what it claimed was an unjust result from a strict application of the statutory formula, taxpayer used only the income from its real estate operations in computing the net income tax portion of schedule A of its CBT return. These net income amounts were reported as $129,614.31 for 1971, $103,357.82 for 1972, $49,822.15 for 1973 and $21,689.31 for 1974. Taxpayer submitted an attachment to the returns explaining its adjustment of the net income to reflect only the real estate holdings in New Jersey. The Director rejected taxpayer’s adjustment, conducted an audit and found taxpayer liable for corporate business taxes as follows:
1971 1972 1973 1974
Net worth tax $3,686.60 $ 4,635.93 $ 4,355.33 $3,677.17
Net income tax $9,467.74 $18,419.38 $19,542.11 $1,494.91
As noted earlier, deficiencies were assessed against taxpayer in the following amounts.
*250 1971 1972 1973 1974
$9,618.51 $18,832.82[4] $19,800.91 $1,089.22
The total tax assessment is $50,633.31, not including interest, of which $49,341.46 is contested.
Taxpayer filed a formal petition with the Director for adjustment pursuant to N.J.S.A. 54:10A-8, which statute provides:
If it shall appear to the Commissioner that an allocation factor determined pursuant to § 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the state, he may adjust it by:
(a) Excluding one or more of the factors therein;
(b) including one or more of the factors, such as expenses, purchases, contract values (minus sub-contract values);
(c) excluding one or more assets in computing entire net worth;
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying another similar or different method calculated to effect a fair and proper allocation of the entire net income and entire net worth reasonably attributable to the state.
The Director denied the petition for the following reasons:
It is the Division’s long standing position that § 8 does not authorize the Division to permit a taxpayer to report its net worth or net income tax on the basis of separate accounting, i.e., by including in the tax base only the assets and income centered or generated in New Jersey, to the exclusion of the assets and income generated elsewhere.
This position is based upon the fact that the statute, by its express terms, does not permit separate accounting and that the statute should not be circumvented to allow separate accounting by means of a § 8 judgment.
It is also the Division’s long standing position that § 8 does not permit a taxpayer to deduct encumbrances from the numerator or denominator of the property fraction. The deduction of such encumbrances is specifically prohibited by N.J.A.C. 18:7-8.5 and § 8 should not be read to circumvent this regulation.
In the present case, line 2(b) of schedule K of the taxpayer’s CBT return shows that the taxpayer made sales to New Jersey customers. Thus, the taxpayer has not shown that each aspect of its business is entirely separate from every other aspect and that the statutory three-factor apportionment formula produces an inequitable result.
*251 In the present case, because the taxpayer’s business is not segregated into distinct parts the taxpayer may not, by means of a § 8 adjustment, exclude investment income and investment securities from the net income and net worth basis respeetively.[5]
The record shows that in denying taxpayer’s petition the Director reviewed no bookkeeping or accounting records of the corporation to determine if, in fact, the allocation formula was unfair or unreasonable. Instead, he reviewed only the tax returns and subsequent correspondence between the parties. This appears to be an insufficient basis for the denial.
The additional assessments levied by the Director resulted from an increase made by him to taxpayer’s net worth and net income. The increase in taxpayer’s net income base was the result of combining income from manufacturing sales and securities investments with its income from real estate holdings. The Director used the company’s net income (as reported for federal income tax purposes) and the New Jersey CBT which had been deducted for federal income tax purposes and then subtracted 50% of dividends received in accordance with N.J.S.A. 54:10A-4(k)(l). Taxpayer’s New Jersey (pre-apportionment) income was then reflected as follows:
1971 1972 1973 1974
$767,543.92 $1,070,251.92 $1,347,059.36 $103,359.85
The Director also changed taxpayer’s net worth computations to correct what he viewed as a failure by taxpayer to adjust its investment securities to reflect their market value, as follows:
1971 1972 1973 1974
$267,309.59 $814,134.23 $990,057.80 ($314,789.56)
After applying the apportionment fraction to these totals, tax *252 payer’s adjusted net income, according to Director, resulted in apportioned net income of:
1971 1972 1973 1974
$222,770.41 $334,897.88 $355,311.15 $27,180.23
Taxpayer contends that the Director’s mechanical use of the statutory method of allocation distorts its income attributable to New Jersey since management, production, control and office location were centered in New York, and that the profits of the corporation for 1971 through 1974 were completely generated by the manufacturing business in New York. In support of this argument it presented testimony and evidence that the company did not advertise in New Jersey magazines or newspapers, had a telephone listing only in the New York directory, that all orders were accepted at its New York factory as a result of customer-initiated inquiries, that it had no office or other facilities in New Jersey, had no employees or payroll allocable to New Jersey, that finished products were made available at the factory only, that it made no installations or deliveries in New Jersey and that there was no marketing effort directed toward New Jersey. Furthermore, no securities investments were held in New Jersey and the sole common denominator of the three aspects of the business was common ownership. This single feature, it argued, is insufficient to categorize the business as “unitary.”
The Director’s claim that the manufacturing business and securities investments are linked together with the real estate operation in a manner sufficient to classify taxpayer as a “unitary” enterprise is founded, in part, on taxpayer’s New Jersey sales tax returns.[6] The Director asserts that sales of *253 machinery by taxpayer to points within New Jersey and the subsequent collection of sales tax for these contracts constituted “doing business” in New Jersey. The Director points out that reported sales in New Jersey by taxpayer were $436,566 in 1971, $986,862 in 1972, $998,740 in 1973 and $706,410 in 1974.
The Director’s arguments, however, fail to recognize the deceptive nature of these gross sales in light of the cost of the machinery which was sold, which cost ranged from $50,000 to $200,000 per machine. When these costs are compared to the total sales figures, one is not given the impression that sales of any great magnitude were made in New Jersey.
Taxpayer is correct in its assertion that, although a company’s unrelated presence within a state may provide a sufficient jurisdictional basis to support liability for collection of a state’s indirect sales tax, this presence is not sufficient to justify collection of franchise taxes which constitute a direct charge on interstate commerce. See National Geographic Society v. California Bd. of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977) (solicitation of mail orders for acceptance out-of-state did not constitute “doing business” so as to subject the company to,state franchise tax; mere solicitation without a substantial related presence within the taxing state cannot constitutionally support the imposition of a direct tax, such as the franchise tax). The lack of a rational relationship between taxpayer’s presence in New Jersey (real estate operation) and the specific business aspect (the manufacturing operations) which the State seeks to include within the franchise tax precludes the taxation of income derived from the latter activity.
The court further finds no rational relationship or nexus between taxpayer’s securities portfolio and its presence in New Jersey. The question of whether a state may apportion income from a foreign corporation’s intangible assets was addressed in ASARCO, supra 458 U.S. at 325-330, 102 S.Ct. at 3114-3117, 73 L.Ed.2d at 801-804. ASARCO, a metal refining firm domiciled in New York, was taxed by Idaho on the revenues it received from a silver mine it operated in Idaho, and on dividend and *254 interest income the company received from its security holdings in domestic and foreign corporations involved in other areas of the metal refining industry. The court found that although there were similarities between ASARCO and the companies in which it held securities, a full analysis of the “underlying economic realities” revealed that the security holdings were a “discrete business activity” which was disassociated with, and unrelated to, its presence in Idaho. Id., 458 U.S. at 328, 102 S.Ct. at 3115, 73 L.Ed.2d at 802. The court reiterated the warning against taxation on investment income given in Mobil Oil Corp. v. Commissioner of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), that:
... We caution that we did not mean to suggest that all underlying dividend income received by corporations operating in interstate commerce is necessarily taxable in each state where that corporation does business. Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing state, due process considerations might well preclude apportionability, because there would be no underlying unitary business. [ASARCO, supra, 458 U.S. at 317-318, 102 S.Ct. at 3110, quoting Mobil, supra, 445 U.S. at 441-442, 100 S.Ct. at 1233-1234; emphasis in original]
As evidenced at trial, taxpayer’s security holdings resembled those of an institutional investor. The Director argues that the securities were purchased in order to acquire vertical and horizontal control of the machine industry and points to taxpayer’s majority holdings in four companies which he views as “potential” suppliers for taxpayer’s hoist business. This argument fails for two reasons. First, in ASARCO and Woolworth it was held that possession of a majority interest which provided a bare “potential” for control does not establish sufficient criterion to justify characterization of a business as “unitary.” It was stated:
Our decision in ASARCO makes clear, however, that the potential to operate a company as part of a unitary business is not dispositive when, looking at “the ‘underlying economic realities of a unitary business,’ ” the dividend income from the subsidiaries in fact is “derive[d] from ‘unrelated business activity’ which constitutes a ‘discrete business enterprise.’ ” [Woolworth, 458 U.S. at 362, 102 S.Ct. at 3134; emphasis in original]
Secondly, even if the evidence had demonstrated an attempt by taxpayer to gain control of the machinery business, such proof would have only served to establish “a relationship of sorts” *255 between the manufacturing business and the securities investment operation and not with the real estate operation in New Jersey.
In a further attempt to show taxpayer to be a “unitary” business the Director classified the company’s operation as one of a centralized nature, claiming that the job responsibilities of the chief operating officer, the company’s single set of accounts, its bank accounts and its tax reporting on a unitary basis for purposes of New York taxation were indicia of centralized management, one of the three factors indicative of a unitary enterprise. These contentions are unconvincing so as to mandate taxation of taxpayer as a unitary business. The position of chief officer does not serve as a boiler-plate classification so as to equate the right of oversight to the scheme of exclusive and centralized management. In fact, the corporate structure envisions the overseeing of the business by directors and/or chief officers. Evidence was introduced by taxpayer, and uncontroverted by the Director, that the operational management of the three businesses was actually diffused among several individuals. The facts reflect that centralized ownership and not centralized management is a proper adjective to describe the personality of the corporation.
The notion that a corporation’s accounting system is an evidentiary tool to prove or disprove the Unitarian nature of its business has been rejected by the court in Mobil and Exxon. The ease with which accounting records may be structured in order to reflect a desired image of the company’s business makes it an unreliable factor by which to demonstrate the economic realities of an operation. See, generally, Hellerstein, “Recent Developments in State Tax Apportionments and the Circumscription of Unitary Business,” 21 Nat'l Tax J. 487, 502-503 (1968), cited in Mobil, supra, 445 U.S. at 439, 100 S.Ct. at 1232. Most recently, in ASARCO and Woolworth, attempts to classify diversified businesses as unitary by presenting evidence of centralized accounting, record keeping, consolidated annual reports and federal income tax preparation were rejected.
*256 The Director’s reliance on taxpayer’s method of New York tax computation is misplaced. New York is taxpayer’s state of domicile. Its tax reporting method differs from that required by New Jersey. New York taxes and the computation of such are irrelevant.
Similarly, the Director’s arguments that taxpayer’s deposits in a single bank account of monies derived from all three businesses does not indicate a unitary enterprise. This concept was expressly rejected in ASARCO and Woolworth. In ASARCO it was held that although investment income from securities generally contributed to the corporation’s overall wealth and strengthened the corporation’s business, it was not a substitute for an actual unitary enterprise:
Idaho’s [taxing state] proposal is that a corporate purpose should define unitary business... This definition of a unitary business would destroy the concept. The business of a corporation requires that it earn money to continue operation and to provide return on its invested capital. Consequently all of its operations, including any investment made, in some sense can be said to be for “purposes related to or contributing to (corporation’s) business.” When pressed to its logical limit, this conception of the “unitary” business limitation becomes no limitation at all. When less ambitious interpretations are employed, the result is simply arbitrary. [458 U.S. at 326, 102 S.Ct. at 3114, 73 L.Ed. 2d at 801]
Likewise in Woolworth, it was held that the potential use of an unrelated business for financial collateral and the consequent commingling of profits from that unrelated business in a single operating fund was insufficient rationale to find the company unitary:
... As relevant here, “the income attributed to a state for tax purposes” must be rationally related to values connected with the state. [Citations omitted]. The state court’s reasoning would trivialize this due process limitation by holding it is satisfied that the income in question “adds to the riches of the corporation...” [citations omitted]. Income, from whatever source, always is a “business advantage” to a corporation. Our cases demand more. In particular, they specify that the proper inquiry looks to the “underlying unity or diversity of business enterprise”, ... not to whether the non-domiciliary parent derives some economic benefit — as it firstly always will — from its ownership of stock in another corporation. [458 U.S. at 363-364, 102 S.Ct. at 3134, 73 L.Ed.2d at 827]
It is the opinion of the court that taxpayer is a nonunitary corporation which, except for its New Jersey real estate holdings, cannot be held subject to apportionment or taxation for *257 CBT purposes. The underlying economic realities of the corporation lead me to conclude that taxpayer’s business consists of three distinct operations; manufacturing, real estate and securities investments. The necessary relationship “to opportunities, benefits, or protection conferred or afforded by the taxing state,” do not here exist so as to warrant the deficiency assessments levied by Director. See Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940).
The Clerk of the Tax Court is directed to enter judgment in favor of taxpayer.

Taxpayer seeks to have the following excluded from income:
1971 - $ 762,446.49
1972 - $1,065,678.45
1973 - $1,387,339.40
1974 - $ 98,316.98
Taxpayer also seeks to have the following excluded from net worth:
1971 - $2,336,096
1972 - $3,025,688
1973 - $3,241,735
1974 - $2,236,531
The resulting deficiency amounts, not including interest, sought by taxpayer to be dismissed are as follows:
1971 - $ 9,618.51
1972 - $18,832.82
1973 - $19,800.91
1974 - $ 1,089.22
Total - $49,341.46

“Entire Net Worth” has been equated with stockholders’ total book equity and “Entire Net Income” has been labeled as federally-taxable income with modifications. See generally, Roadway Express, Inc. v. Taxation Div. Director, 50 N.J. 471, 236 A.2d 577 (1967); N.J.S.A. 54:10A-5(a) and (c).

The allocation factor is the average of three fractions (N.J.S.A. 54:10A-6): (1) The average value of the real and tangible personal property belonging to taxpayer within the state during the period in question, divided by the average value of all such property wherever situated. (2) The receipts of taxpayer arising during the period in question from the sales of tangible personal property made to all points within the state, services performed within the state, rents and royalties from property located in the state or copyrights-patents within the state, and other business receipts earned within the state, divided by the total amount of all such receipts belonging to taxpayer, wherever earned during the period. (3) Wages, salaries and other personal service compensation of officers/employees located within the state, divided by wages, salaries and other compensation paid to all of the taxpayer’s officers/employees during the period in question.

The Director assessed an additional $1,291.85 for 1972 on account of a federal income tax adjustment. Taxpayer has not contested this adjustment.

These reasons were contained in the affidavit of the supervising auditor of the Division of Taxation.

Taxpayer asserted that its inclusion of the sales to New Jersey customers on Schedule K of the CBT was an error made in ignorance. It pointed out that it consistently presented the objection to apportionment of income from its manufacturing business and securities in its (1) tax return, (2) correspondence with the tax auditors, (3) in petition for administrative adjustment, and (4) in the pretrial order entered in the instant case.