LASSER, P.J.T.C.
This case comes before the court on remand from the New Jersey Supreme Court, which held that taxpayer, Silent Hoist & Crane Co. (Silent Hoist), conducts its business as a “unitary business” and that its income from sales, property and investments in securities attributable to New Jersey is subject to the corporation business tax (CBT), N.J.S.A. 54:10A-1 et seq. Silent Hoist & Crane v. Taxation Div. Director, 100 N.J. 1, 494 A.2d 775 (1985). This case was remanded to the Tax Court to afford Silent Hoist an opportunity to demonstrate that the CBT allocation formula, N.J.S.A. 54:10A-6 (§ 6), as applied to it, produced an unfair result by subjecting to tax an amount of income disproportionately greater than its activities in New Jersey warranted. Id. at 26. The tax years at issue are 1971-1974.
Taxpayer contends that, notwithstanding the finding by the New Jersey Supreme Court that it conducts itself as a unitary business, administrative fairness dictates that its original, self-administered adjustment on its CBT returns (reporting only the rental income generated by its real property in New Jersey) be accepted in resolution of the case, or, in the alternative, that the tax be recalculated to exclude its New Jersey property from the computation of the allocation factor, as permitted in the discretion of the Director under N.J.S.A. 54:10A-8 (§ 8). Silent Hoist argues that inclusion in the allocation formula of its New Jersey real property, which accounts for a substantial percent *181 age of its property everywhere, but which had net losses for the tax years in question, distorts the overall allocation factor so as to subject to tax income not fairly attributable to New Jersey.
The Director maintains his original position that taxpayer is not entitled to a § 8 adjustment and that the allocation formula fairly allocates taxpayer’s income to New Jersey.
The § 6 allocation formula, which is applied to the net worth and net income tax bases to allocate those portions attributable to the corporation’s activities in New Jersey, consists of three factors: property, payroll and receipts. Each of these factors is expressed as a separate fraction, the numerator of which is, respectively, taxpayer’s New Jersey property, payroll and receipts, and the denominator of which is, respectively, taxpayer’s total property, payroll and receipts generated by the operations of the entire corporation. These fractions are averaged, and the resulting fraction is applied to taxpayer’s net worth and net income everywhere to determine the percentage of its net worth and net income attributable to New Jersey. Silent Hoist, supra, 100 N.J. at 12, 494 A.2d 775.
I.
The facts with respect to this case have been fully set forth in both the opinion of the Supreme Court at 100 N.J. 1, 494 A.2d 775 and the opinion of the Tax Court at 5 N.J.Tax 242. Only those facts bearing on the fairness of the allocation factor will be presented here.
Silent Hoist is a New York corporation having its principal place of business and its manufacturing plant in Brooklyn, New York. It manufactures and sells hoisting equipment and invests in real property and securities.
For the tax years in issue, Silent Hoist’s New Jersey activities were the ownership of real property and the sale of its manufactured products. Silent Hoist owned two parcels of commercial property in New Jersey, one in Clifton and one in Bloomfield. The Clifton property was improved with two indus *182 trial buildings, and was valued by taxpayer for the subject tax years as follows:
Land and first building $2,700,341.00
Second building 722,526.10
Total $3,422,867.10
The first building was multi-tenanted, with a maximum of four tenants occupying the building at any time. All of the tenants had net leases which provided that the tenants were responsible for all expenses related to the building except taxes, insurance and structural repairs. The second building on the Clifton parcel was net leased to a single tenant. At one time, Silent Hoist had intended to move its plant to the first building, but then abandoned the idea.
The Bloomfield parcel was improved with an industrial building, and was valued by taxpayer at $756,565.50. This building was vacant during the tax years in question. In 1980, Silent Hoist sold this parcel for $1,250,000, realizing a taxable gain of $663,284.
Taxpayer reported net losses on the operation of these properties for each of the subject tax years. The deductions which resulted in the net losses included substantial sums for depreciation. The gross rent, depreciation and net loss for each tax year as reported and the net income before depreciation were:
1971 1972 1973 1974
Gross rent $294,529.46 $408,854.45 $397,856.65 $398,098.35
Depreciation 130,942.00 225,948.22 198,713.92 176,357.57
Other deductions [1] 293,201.78 286,264.05 248,964.88 243,430.09
Net loss (129,614.32) (103,357.82) (49,822.15) (21,689.31)
*183 Net income before depreciation 1,327.68 122,590.40 148,891.77 154,668.26
The operation of this real property therefore resulted in a positive cash flow, and the tax loss reduced Silent Hoist’s taxable income.
Taxpayer reported on its CBT returns that its New Jersey property, as a percentage of its property everywhere, was:
1971 1972 1973 1974
New Jersey property 73.3 69.67 64.39 64.91 percentage
Silent Hoist made sales in New Jersey for the tax years in question. The percentages of its receipts from sales in New Jersey to its receipts from sales everywhere, as reported on its CBT returns for the purpose of computing its overall allocation factors, were:
1971 1972 1973 1974
New Jersey receipts 13.89 26.4 20.28 18.9 percentage
Taxpayer reported that it paid no wages to employees in New Jersey during the subject tax years, resulting in a zero payroll factor for those years. The court notes, however, that riders attached to the returns indicate that Silent Hoist paid for “watchman security guards” in 1971 and 1972 and “watchman security services” in 1973 and 1974 for its New Jersey real property. The record does not indicate whether these watchmen were directly employed by Silent Hoist or were contracted for.
Silent Hoist computed its overall allocation factor on its CBT returns for the relevant years as follows:
*184 1971 1972 1973 1974
Overall allocation 29.06 32.02 28.19 27.94 factor
Taxpayer’s federal income tax returns show that during the relevant period, Silent Hoist paid state taxes only to New Jersey and New York, except for property taxes paid to Connecticut for a truck based in that state.
On its New York corporation franchise tax returns, Silent Hoist allocated its income attributable to New York under a similar three-factor allocation formula. In computing its New York allocation factor, taxpayer included its New Jersey real property and New Jersey sales in the denominator of the respective fractions used to derive the applicable allocation factor. This reduced taxpayer’s income subject to tax by New York.
The property, payroll and receipts percentages and overall allocation factor as reported on the New York returns for the subject years were:
1971 1972 1973 1974
Property 24.15 24.54 22.98 21.49
Receipts 14.35 11.14 11.03 11.43
Payroll 100.00 100.00 100.00 100.00
Overall allocation factor 46.17 45.23 44.67 44.31 [2]
*185 When Silent Hoist filed its New Jersey CBT returns for the subject years, it reported as income only the net losses generated by the New Jersey real property. It excluded all income from its manufacturing, sales and other investments. This was done to correct what taxpayer claimed was an unjust result from the strict application of the statutory formula. Silent Hoist, supra, 5 N.J. Tax at 249. Silent Hoist did compute the § 6 allocation factor, taking into account all of its operations in New Jersey and elsewhere, but applied the factor only to the net losses from its New Jersey property, resulting in no taxable income attributable to New Jersey.
The Director conducted an audit and determined that Silent Hoist was required to report income from all phases of its business everywhere and apply the allocation formula to that income to determine the income subject to tax by New Jersey. Pursuant to this ruling, the Director issued deficiency assessments. Taxpayer then filed a formal petition for adjustment under § 8. The Director denied this petition for the following reasons:
It is the Division’s long standing position that § 8 does not authorize the Division to permit a taxpayer to report its net worth or net income tax on the basis of separate accounting, i.e., by including in the tax base only the assets and income centered or generated in New Jersey, to the exclusion of the assets and income generated elsewhere.
This position is based upon the fact that the statute, by its express terms, does not permit separate accounting and that the statute should not be circumvented to allow separate accounting by means of a § 8 judgment.
It is also the Division’s long standing position that § 8 does not permit a taxpayer to deduct encumbrances from the numerator or denominator of the property fraction. The deduction of such encumbrances is specifically prohibited by N.J.A.C. 18:7-8.5 and § 8 should not be read to circumvent this regulation.
In the present case, line 2(b) of schedule K of the taxpayer’s CBT return shows that the taxpayer made sales to New Jersey customers. Thus, the taxpayer has not shown that each aspect of its business is entirely separate from every other aspect and that the statutory three-factor apportionment formula produces an inequitable result.
*186 In the present case, because the taxpayer’s business is not segregated into distinct parts the taxpayer may not, by means of a § 8 adjustment, exclude investment income and investment securities from the net income and net worth basis respectively. [5 N.J.Tax 250-251]
Silent Hoist then filed a complaint in the Tax Court challenging the deficiency assessments. Silent Hoist contended that its business was “non-unitary” and sought to have its income from sales and investments in securities excluded from its New Jersey taxable income.
The Tax Court held that taxpayer’s business was not a unitary business subject to apportionment. The court also commented that the Director had erred by failing to review taxpayer’s bookkeeping or accounting records prior to his decision on the requested § 8 adjustment, but this was not a holding by the court. The Tax Court decision was affirmed by the Appellate Division of the Superior Court at 6 N.J. Tax 347 (App.Div.1984).
The Supreme Court reversed these lower court rulings and held that Silent Hoist conducted a “unitary business” which included manufacturing, sales, real property operations and investments in securities, and that it must apply the statutory allocation formula to income from all of its operations. This decision was based on a finding that Silent Hoist enjoyed the benefit of centralized management and operations and that its real property investments did not constitute a discrete business enterprise. The court further found that funds generated by the New Jersey real property contributed to the rest of the business and that losses generated by the property acted as a tax shelter.
The Supreme Court noted that, on appeal, taxpayer had relied solely on its unitary business arguments and had not challenged the apportionment formula or its application in taxpayer’s case. The court therefore remanded the matter to the Tax *187 Court to give Silent Hoist an opportunity to demonstrate that the apportionment formula, as applied to its business, resulted in an unfair or unconstitutional allocation. Accordingly, the Tax Court has permitted Silent Hoist to supplement the record and submit briefs on this issue.
Taxpayer contends that including its loss-producing real property in its New Jersey allocation formula results in an unfair and disproportionate percentage of its income being allocated to New Jersey. It points out that while this real property produced a negative contribution to its net income, it constituted the most substantial portion of the allocation factor.
The Director responds by claiming that the cash flow and income tax savings produced by the New Jersey real property significantly contributed to Silent Hoist’s manufacturing and sales operations. The Director also notes that the overall allocation factor closely approximated taxpayer’s percentage of receipts from its sales in New Jersey.
At oral argument, the court requested that Silent Hoist quantify its claim of unfairness. It then provided taxpayer a full opportunity to develop information which would demonstrate the extent of the unfairness caused by including the real property in its allocation factor. In response, taxpayer suggested that the receipts factor alone provides a better estimate of its business attributable to New Jersey. It also stated that the majority of its income allocated to New Jersey is allocated because of its real property in New Jersey which, it contends, does not contribute to its principal manufacturing business.
II.
The Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq., requires a corporation to pay an annual franchise tax for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office in this State. A unitary business with operations in New Jersey and other states must pay a tax on that portion of its income *188 attributable to its activities in New Jersey as determined by application of the allocation formula. Silent Hoist, supra. Section 8 is a relief provision which permits the Director to adjust the allocation factor. It provides:
If it shall appear to the [Director] that an allocation factor determined pursuant to section 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or,, more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
This section authorizes the Director to make adjustments to an allocation factor when the formula, as applied, results in such a degree of misapportionment as to produce an unconstitutional result. In addition, the Director has the authority and obligation under § 8 to consider requests for adjustment based on claims of unfairness which do not attain constitutional dimensions but which still result in “substantial inequity.” F.W. Woolworth Co. v. Director, Div. of Taxation, 45 N.J. 466, 497, 213 A.2d 1 (1965). In Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984), the court stated that the Director is given broad general discretion to enable him to determine a fair percentage of a taxpayer’s net income that can be attributed to the State.
In the subject case, the determination by the Supreme Court that Silent Hoist is a “unitary business” forecloses a challenge to the taxability by New Jersey, on an allocated basis, of taxpayer’s income from all of its sales and investments. The only question now before the court is whether Silent Hoist can demonstrate that the allocation factor produces an unconstitutional ”or unfair result by attributing a disproportionate amount of taxpayer’s income to New Jersey and whether an adjustment under § 8 is warranted.
*189 III.

Does The New Jersey Apportionment Formula Produce An Unconstitutional Result?

The United States Supreme Court has found, on only one occasion in Hans Rees’ Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931), that the application of a state’s apportionment formula produced an unconstitutional result. In that case, a New York corporation, engaged in manufacturing and tanning leather products, challenged the allocation of its income under a North Carolina statute. North Carolina utilized a single-factor property formula to allocate income which, when applied to the taxpayer, resulted in allocation factors of 83, 85, 66 and 85 for the years 1921-1924, respectively.
Hans Rees’ Sons’ operations included wholesale and retail sales. Its manufacturing plant was located in North Carolina, and its sales office and warehouse were in New York, where it also performed certain finishing work. All sales were made from the New York office, with roughly one-half of the shipments sent directly from North Carolina and the other half distributed through the New York warehouse. Taxpayer presented evidence which indicated that its income was derived from (1) buying profit, (2) manufacturing profit, and (3) selling profit. It then contended that the share of its income attributable to manufacturing and tanning was 17%, based on the retail price markup of the cost of the manufactured goods, and that this figure represented the income attributable to North Carolina.
The North Carolina state courts excluded taxpayer’s evidence and held that the apportionment statute was valid on its face. The Supreme Court reversed, stating that evidence on taxpayer’s operations “may always be received which tends to show that a state has applied a method, which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdictions.” 283 U.S. at 134, 51 S.Ct. at 389, 75 L.Ed. at 906. The court did not rule *190 on the question of how much income should be allocated to North Carolina and found it sufficient to say that,
in any aspect of the evidence, and upon the assumption made by the state court with respect to the facts shown, the statutory method, as applied to the appellant’s business for the years in question operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that state. [283 U.S. at 135-136, 51 S.Ct. at 389, 75 L.Ed. at 908]
In other cases, the Court has upheld the allocation of income under a single-factor apportionment formula. In Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165 (1920), a Delaware corporation challenged the allocation of its income to Connecticut based on the percentage of its property located there. The corporation performed all of its manufacturing in Connecticut but had its main office in New York and branch offices in several other states. The Connecticut formula allocated 47% of Underwood’s income to that state. Underwood’s claim that Connecticut taxed income not attributable to that state rested “solely upon the showing that, of its net profits, $1,293,643.95 was received in other states and $42,-942.18 in Connecticut.” 254 U.S. at 120, 41 S.Ct. at 47, 65 L.Ed. at 169.
The Court found that the corporation’s operations entailed a series of transactions, including manufacturing and selling, and that Underwood had failed to offer proof that the 47% of its income from the sale of manufactured products allocated to Connecticut was not attributable to its manufacturing centered in that state. The court concluded that there was “consequently, nothing in the record to show that the method of apportionment adopted by the state was inherently arbitrary, or that its application to this corporation produced an unreasonable result.” 254 U.S. at 121, 41 S.Ct. at 47, 65 L.Ed. at 169-170.
In Moorman Mfg. Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), an Illinois corporation challenged allocation of its income to Iowa under a statutory formula which allocated income on the basis of the percentage of sales within the state. The corporation claimed that Iowa’s statute resulted in the taxation by Iowa of income attributable to activities in Illinois *191 and that Iowa’s single-factor apportionment resulted in double taxation.
The Court upheld the allocation to Iowa, noting that the taxpayer had not shown that a significant portion of its income attributable to Iowa was generated in Illinois.
[T]he record does not contain any separate accounting analysis showing what portion of appellant’s profits was attributable to sales, to manufacturing, or to any other phase of the company’s operations. [437 U.S. at 272, 98 S.Ct. at 2344, 57 L.Ed.2d at 204]
Taxpayer’s argument was that some portion of its Iowa sales must have been generated by Illinois activity. The Court responded by stating that the Constitution did not invalidate an apportionment formula where it may result in taxation of some income that did not have its source in the taxing state. 437 U.S. at 272, 98 S.Ct. at 2344, 57 L.Ed.2d at 204. The Court then repeated the basic principle that:
The States have wide latitude in the selection of apportionment formulas and that a formula-produced assessment will only be disturbed when the taxpayer has proved by ‘clear and cogent evidence’ that the income attributed to the State is in fact ‘out of all proportion to the business transacted ... in that State,’ or has ‘led to a grossly distorted result.’ [437 U.S. at 274, 98 S.Ct. at 2345, 57 L.Ed.2d at 205; citation omitted]
On the issue of double taxation, the Court held that the Commerce Clause did not prohibit an overlap in the computation of taxable income by individual states. The Court stated that the prevention of duplicative taxation would require a nationwide, uniform rule for the division of income, which it chose not to mandate.
These single-factor apportionment cases provide limited guidance for determining whether allocation of income under a three-factor allocation formula produces an unconstitutional result. What has been established is that: (1) the Court looks for quantitative evidence showing what portion of a corporation’s income is generated by separate phases of its operations in order to determine the sources of its income; (2) states may constitutionally allocate income under an allocation formula which may result in taxation of income that did not have its source in the taxing state, and (3) clear and cogent evidence *192 that an allocation is out of all appropriate proportion to the business transacted in the taxing state is required to invalidate an allocation of income.
In the subject case, Silent Hoist has not submitted any evidence to quantify the contribution to income generated by its New Jersey activities. The record does indicate that Silent Hoist was not subject to duplicative taxation for the subject years. In fact, less than 80% of taxpayer’s income was allocated to states imposing an income tax. A comparison between taxpayer’s percentage of sales in New Jersey as reported on its CBT returns and its overall allocation factor shows that the overall factor is not “out of all appropriate proportion” to taxpayer’s activities in New Jersey based on its sales activity. Receipts from sales in New Jersey ranged from 13.89% to 26.40% of taxpayer’s receipts from sales everywhere. The overall factor was between 27.94% and 32.02%. As stated in Moorman, the percentage of sales in a state may underestimate the contribution of those sales to a corporation’s entire net income. Moorman, supra, 437 U.S. at 272, 98 S.Ct. at 2344. I therefore conclude that Silent Hoist has not demonstrated that the allocation of its income to New Jersey under N.J.S.A. 54:10A-6 is constitutionally invalid.
IV.

Does The New Jersey Allocation Factor Produce An Unfair Result?

The issue of administrative fairness is separate from constitutional considerations. The requirement in New Jersey that the allocation of income be judged on fairness is predicated on § 8. F.W. Woolworth, supra. Section 8 refers to an allocation factor which properly reflects a taxpayer’s activity, business receipts and income reasonably attributable to this State. Therefore, the Court must not only determine whether the allocation factor is out of all appropriate proportion but whether the allocation produces an unfairly inaccurate reflection of a corporation’s activities in New Jersey.
*193 On the issue of fairness, taxpayer has consistently focused on the property factor (the percentage of its property located in New Jersey) which is then factored in with the percentage of sales and wages in New Jersey to derive an overall allocation factor. Section 8, however, refers only to the fairness of the overall allocation factor, not to that of any individual factor. The court therefore is not required to determine whether the reported property percentage for a subject tax year is “fair,” but only whether the overall allocation factor does not properly reflect Silent Hoist’s activities in New Jersey.
The three-factor allocation formula attributes income to a taxing state by taking into account the sales, property and employee activity in that state. It is the benchmark against which other apportionment formulas are judged. Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). Silent Hoist argues that there was no operational connection between its New Jersey real property and its manufacturing and investment businesses and that inclusion of the real property in the allocation formula distorts the overall allocation formula. However, the holding of the New Jersey Supreme Court that Silent Hoist operates as a unitary business includes a finding that its real property contributes to its production of income. Moreover, the findings as to taxpayer’s total operations support the fairness of the allocation factor computed pursuant to § 6.
Silent Hoist had substantial sales in New Jersey during the years in question. As stated above, the percentage of its receipts from sales in New Jersey ranged from 13.89% to 26.40% of its receipts from sales everywhere. The record shows that its New Jersey sales were from repeat orders, requiring less selling expense, which indicates that the receipts percentages underestimate the contribution to income from New Jersey sales.
Silent Hoist’s use of its employees in New Jersey to solicit sales, repair machinery and train customers’ personnel is evidence of employee activity in New Jersey. Because the payroll *194 factor in New Jersey was zero, the allocation factor does not reflect income generated by this use of human resources in this State.
Taxpayer maintained a single bank account and centralized management and administration. The positive cash flow generated by the New Jersey real property contributed to the working capital used in the production of income from manufacturing and investments. This cash flow, plus the federal and New York tax savings generated, demonstrate a contribution to income from its New Jersey real property. With regard to income from investment securities, the New Jersey Supreme Court’s determination that taxpayer’s business is unitary disposes of any question concerning inclusion of the securities investment income in the income base, leaving in question only the fairness of the allocation factor.
I find that the contribution to taxpayer’s income from New Jersey sales, employee activity and real property is fairly reflected in the allocation factor. Allocating based solely on the percentage of Silent Hoist’s receipts from sales in New Jersey would result in an allocation factor ranging from 13.89% to 26.40%. It is not fair to allocate solely on the receipts factor because there was substantial business activity within the State of New Jersey that is not reflected by sales volume alone. Most important is the fact that Silent Hoist owns substantial real property in the State which, by reason of the services rendered to that property by the State, justifies taking the property into consideration in arriving at a “fair” overall allocation factor. In addition, the real property contributes to the income of taxpayer’s business. The overall factors, ranging from 27.94 to 32.02 for the respective tax years, provide a rough approximation of the income generated in New Jersey, taking into consideration the importance to the business of the real property in New Jersey. I note that taxpayer has not attempted to quantify the contributions made by the separate facets of its operations and has offered no proof to demonstrate that the allocation factors should be reduced. The allocation factors, as computed, roughly approximate income attributable *195 to New Jersey and are sufficient to meet the fairness standard. F.W. Woolworth, supra, 45 N.J. at 495, 213 A.2d 1.
Fairness of the allocation of income to New Jersey is also achieved by the consistent use of New Jersey real property in the apportionment formulas in determining Silent Hoist’s taxable income in New Jersey and New York. Silent Hoist used its substantial ownership of real property in New Jersey to reduce its income allocated to and taxable by New York under that state’s three-factor formula. Fairness dictates that taxpayer’s New Jersey real property be treated consistently by including it in the computation of both the New Jersey and New York factors.
Based on the foregoing, I conclude that the Director’s allocation results in tax assessments that are fairly apportioned, and that the apportionment meets both constitutional and fairness tests. The Clerk of the Tax Court is therefore directed to enter judgment affirming the Director’s 1971-1974 assessments, together with interest to be calculated as agreed to by the parties.

These included interest, insurance, renting commissions, security guards, taxes (other than New Jersey corporation franchise tax) and other miscellaneous expenses.

 Eliminating the New Jersey property from the denominator of the fraction used to obtain the property percentage results in the following property percentages and overall allocation factors for New York:
1971 1972 1973 1974
Property 75.35 74.84 67.21 60.98
Overall allocation factor 63.23 61.99 59.41 57.47